IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DANIEL A. D. GOSSAI, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04cv3014 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JON BRUNING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 36, the Motion for Summary Judgment filed by the defendants, Jon Bruning, et al. In a Memorandum and Order of March 9, 2006 (filing no. 48), I denied that part of the Motion for Summary Judgment based on the principles expressed in Heck v. Humphrey, 512 U.S. 477 (1994), and I directed the plaintiff, Daniel A. D. Gossai, to respond to the remaining aspects of the defendants' Motion by April 12, 2006. The plaintiff has done so (filing nos. 49 and 50).

In his complaint (filing no. 1), as supplemented (filing no. 14), and as amended (filing no. 34, limited by filing no. 48), the plaintiff seeks monetary, declaratory and injunctive relief from the defendants in their individual and official capacities. The plaintiff alleges federal civil rights claims pursuant to 42 U.S.C. § 1983 and state law claims of defamation, conspiracy and intentional infliction of emotional distress against the following named defendants: Nebraska Attorney General Jon Bruning; Lynn Fritz, Co-Director of the Consumer Protection Division of the Nebraska Attorney General's Office; State Commissioner of Education Doug Christiansen; and Nebraska Assistant Attorney General Leslie Levy.

The Consumer Protection Division of the Nebraska Attorney General's Office took action under state law against the California Alternative High School ("CAHS"), operated by the plaintiff. According to the plaintiff, while the parties were negotiating, and after the plaintiff threatened to file a civil rights action, the State filed a case against the plaintiff under Nebraska law. The parties agree that the Nebraska Attorney General, Jon Bruning, fled Case No. 1033-374, State ex rel. John Bruning v. California Alternative High School,

et al., against the plaintiff, CAHS and others, alleging violations of Nebraska law, i.e., the Uniform Deceptive Trade Practices Act and the Consumer Protection Act, in the District Court of Douglas County, Nebraska. Bruning filed the state case on December 29, 2003, and the plaintiff filed this case on January 23, 2004.

For a lengthy period, I stayed all activity in the above-entitled case under the Younger doctrine – see Younger v. Harris, 401 U.S. 37 (1971).[1] After approximately a year, I dissolved the stay and ordered the case progressed. In the interim, the state litigation has reached a conclusion in certain important respects. An Order of Permanent Injunction, including findings of fact and conclusions of law, was entered on March 9, 2005, and the state court entered an Order on June 30, 2005 denying Mr. Gossai's motion for reconsideration and to vacate the judgment. Presently, the state court is engaged in determining the amounts of restitution Mr. Gossai will be required to pay to third parties.

In filing no. 37 at 7, the defendants state that Mr. Gossai appealed the state court Order of Permanent Injunction to the Nebraska Court of Appeals, and the appellate court dismissed the appeal as untimely. Therefore, it appears that the Order of Permanent Injunction is a final order, including the findings of fact and conclusions of law contained therein.[2]

In his complaint in this case, the plaintiff states that he is the principal of CAHS, a school which grants alternative adult high school diplomas to individuals over the age of

---

[1] Under Younger v. Harris, 401 U.S. 37 (1971), and progeny, federal district courts may refrain, based on interests of comity and federalism, from hearing a case that would interfere with a pending state criminal proceeding or with certain types of state civil proceedings. See generally Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 716-17 (1996) (listing examples of circumstances in which a federal district court may appropriately abstain from exercising its jurisdiction).

[2] Unfortunately, the finality of the state-court decision may not be as clear as represented by the defendants. The plaintiff contends that Mr. Bruning opposed the state-court appeal, claiming that the judgment did not constitute a final order, and that the Court of Appeals lacked jurisdiction. However, the defendants represent to this court that the Court of Appeals dismissed the appeal on the basis of untimeliness, not lack of finality. Although neither party has provided this court with a copy of the order by the Court of Appeals, I will assume, at least provisionally, that defendants' counsel has not misrepresented the finality of the state-court judgment.

eighteen. According to the plaintiff, the defendants conspired to drive the plaintiff out of business in the State of Nebraska, defamed him and CAHS, and discriminated against him because of his race, color or national origin.

In his first cause of action, the plaintiff seeks an injunction to prevent the defendants from interfering with the plaintiff's business, i.e., CAHS, in Nebraska. In his second cause of action, the plaintiff seeks a declaratory judgment that the defendants have defamed him and CAHS, have wrongfully interfered with the plaintiff's business, and have deprived the plaintiff of due process and equal protection. In his third cause of action, the plaintiff alleges a civil conspiracy among the defendants to deprive the plaintiff of due process and equal protection, motivated by racial animus. In his fourth cause of action, the plaintiff alleges violation of his civil rights when the defendants attempted to require the plaintiff to comply with laws and regulations governing traditional high school diplomas for compulsory age education, rather than the alternative adult high school diploma that CAHS offers. According to the plaintiff, alternative adult high school diplomas are within a largely unregulated area in Nebraska law. In his fifth cause of action, the plaintiff alleges defamation, and in his sixth cause of action, he alleges intentional infliction of emotional distress.

Assuming the finality of the Order of Permanent Injunction entered on March 9, 2005, including the findings of fact and conclusions of law by the District Court of Douglas County, much of the above-entitled case is now barred by two similar but distinct doctrines. As discussed below, the Rooker-Feldman doctrine prevents the plaintiff from treating this court as an appellate court and attempting to obtain a reversal, amendment or alteration of the judgment rendered by the state court. Collateral estoppel, on the other hand, means that when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a subsequent lawsuit.[3]

---

[3]Four conditions must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a final judgment on the merits, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. Farm Credit Bank of Omaha v. Stute, 537 N.W.2d 496, 497 (Neb. 1995).

3

Insofar as the plaintiff seeks in this case to challenge, even if indirectly, the judgment against him in the courts of Nebraska, the "Rooker-Feldman doctrine" bars this court from looking behind a state court judgment, and no injunctive relief is available in this court to do so. The Rooker-Feldman doctrine rests on the premise that a federal district court is not an appellate court. Thus, this court does not possess authority to review or alter a final judgment by a state court in judicial proceedings. To the extent that the plaintiff's claims constitute an indirect attempt to attack or undermine the judgment in the Douglas County District Court, appellate jurisdiction over state-court decisions, even when the challenge to the state court's actions involves federal constitutional issues, lies exclusively in the United States Supreme Court. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Federal district courts do not have jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486. See also Ballinger v. Culotta, 322 F.3d 546, 548-49 (8th Cir. 2003):

> The Rooker-Feldman doctrine provides that, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments."... District courts may not review state court decisions, "even if those challenges allege that the state court's action was unconstitutional," ... because "[f]ederal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court," .... A party who was unsuccessful in state court thus "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court based on the losing party's claim that the state judgment itself violates the loser's federal rights."... **This jurisdictional bar extends not only to** "**straightforward appeals but also [to] more indirect attempts by federal plaintiffs to undermine state court decisions**."... **Federal district courts thus may not** "**exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court.**"

(Emphasis added; citations omitted.)

On the other hand, the Rooker-Feldman doctrine does not supplant traditional preclusion doctrines such as collateral estoppel. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S.Ct. 1517 (2005): "The Rooker-Feldman doctrine ... is confined to

4

cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Id. at 1521-22. "When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court." Id. at 1526. "Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. The Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" Id. at 1527 (citations omitted).

The plaintiff alleges that the defendants defamed and stigmatized him and violated his civil rights by seeking to prevent him from conducting the business of CAHS in Nebraska. However, in the Order of Permanent Injunction issued by the District Court of Douglas County (filing no. 38-9, Exh. 1L), the state court determined that the defendants' accusations against the plaintiff and CAHS were true, and that the plaintiff and CAHS had violated Nebraska education, consumer fraud and deceptive trade practices laws. (Id.) The state court enjoined the plaintiff, CAHS and others from operating the CAHS or any other school or course of study in Nebraska purporting to be a "high school" or purporting to offer a "high school diploma" except in compliance with Nebraska law. (Id.)

Those issues cannot be relitigated, and thus, the plaintiff's first, second, third, fourth and fifth causes of action against all defendants in their official and individual capacities must be dismissed as precluded by the state court judgment. (See findings of fact and conclusions of law in filing no. 38-9, Exh. 1L.) Those causes of action are also dismissed for the additional reasons discussed below.

The plaintiff received all of the "process" he was "due," under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in the state court proceedings where he had the opportunity to defend himself against the charges that he and other persons involved in operating CAHS had defrauded Nebraska consumers. Also,

5

the plaintiff generally alleges that other were treated more favorably than he, but the plaintiff has pointed to absolutely no similarly situated providers of educational services or high school diplomas who received the allegedly more favorable treatment.

The plaintiff's challenges to the defendants' interpretation of Nebraska law concerning requirements for offering high school courses or diplomas is a matter of state law. Not only has the Douglas County District Court decided the issue, but "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993). The Eleventh Amendment to the United States Constitution deprives federal courts of jurisdiction over claims for injunctive relief to require state officials to conform to state law. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 106 (1984). Therefore, the plaintiff may not attempt to enjoin state officials from an alleged prospective violation of *state* law. Id. at 104-06.

I have previously explained (filing no. 13) that the Eleventh Amendment to the United States Constitution bars claims for monetary relief by private parties against state employees in their official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

While the defendants did not raise the issue of qualified immunity in their Motion for Summary Judgment, they did so in their Brief in Opposition to Plaintiff's Motion for Leave to Amend (filing no. 45). It is highly probable that each of the defendants in his or her individual capacity is shielded by qualified immunity from the plaintiff's claims for damages in the circumstances of this case, especially in light of the outcome of the state-court proceedings.

As for the plaintiff's third cause of action, the record contains absolutely no evidence whatsoever that the plaintiff's race, color or national origin constituted a factor in the defendants' decisions to take action against the plaintiff and CAHS. When reviewing the record in connection with a motion for summary judgment, the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. However, "there is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A party opposing summary judgment must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." Id. The plaintiff has provided nothing more than speculation that race played a part in the defendants' decisions at issue in this case. Thus, there exists no genuine issue for trial on the plaintiff's claims of unequal protection and racial animus.

Finally, the plaintiff's sixth cause of action, intentional infliction of emotional distress, arises under Nebraska law. The court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over claims arising under state law when the claim(s) over which the court has original jurisdiction have been dismissed. In addition, 28 U.S.C. § 1367(d) tolled the limitations period for the state law claim against the individual defendants while this federal case was pending. I do not speculate whether the plaintiff has a viable cause of action under state law which he may bring in a state court. However, the plaintiff's sixth cause of action will be dismissed without prejudice.

THEREFORE, IT IS ORDERED:

1. That filing no. 36, the defendants' Motion for Summary Judgment, is granted;

2. That the plaintiff's first, second, third, fourth and fifth causes of action against all defendants are dismissed with prejudice, and his sixth cause of action, i.e, intentional infliction of emotional distress arising under state law, is dismissed without prejudice; and

3. That judgment will be entered accordingly.

April 18, 2006. BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge

nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A party opposing summary judgment must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  Id.  The plaintiff has provided nothing more than speculation that race played a part in the defendants' decisions at issue in this case.  Thus, there exists no genuine issue for trial on the plaintiff's claims of unequal protection and racial animus.

Finally, the plaintiff's sixth cause of action, intentional infliction of emotional distress, arises under Nebraska law.  The court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over claims arising under state law when the claim(s) over which the court has original jurisdiction have been dismissed.  In addition, 28 U.S.C. § 1367(d) tolled the limitations period for the state law claim against the individual defendants while this federal case was pending.  I do not speculate whether the plaintiff has a viable cause of action under state law which he may bring in a state court.  However, the plaintiff's sixth cause of action will be dismissed without prejudice.

THEREFORE, IT IS ORDERED:

1.	That filing no. 36, the defendants' Motion for Summary Judgment, is granted;

2.	That the plaintiff's first, second, third, fourth and fifth causes of action against all defendants are dismissed with prejudice, and his sixth cause of action, i.e, intentional infliction of emotional distress arising under state law, is dismissed without prejudice; and

3.	That judgment will be entered accordingly.

April 18, 2006.			BY THE COURT:

					s/ *Richard G. Kopf*
					United States District Judge